UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

KEITH A. BROWN,

                    Petitioner,

        v.

ALBERTO RAMIREZ,

                    Respondent.

Case No. 1:17-cv-00093-CWD

**MEMORANDUM DECISION AND ORDER**

Pending before the Court is a Petition for Writ of Habeas Corpus filed by Idaho

state prisoner Keith A. Brown ("Petitioner"), challenging his Bonner County convictions

of voluntary manslaughter and accessory to grand theft. (Dkt. 1.) Respondent has filed a

Motion for Partial Summary Dismissal, arguing that Claims 2 through 9 are subject to

dismissal as procedurally defaulted or noncognizable. (Dkt. 12.) Also pending is

Petitioner's Motion for Application of *Martinez v. Ryan.* (Dkt. 14.)

The Court takes judicial notice of the records from Petitioner's state court

proceedings, which have been lodged by Respondent. (Dkt. 10, 19.) *See* Fed. R. Evid.

201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006).

The parties have consented to the jurisdiction of a United States Magistrate Judge

to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c). (Dkt. 8.)

Having carefully reviewed the record, including the state court record, the Court finds

that the parties have adequately presented the facts and legal arguments in the briefs and

record and that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d).

Accordingly, the Court enters the following Order conditionally granting Respondent's Motion for Partial Summary Dismissal and conditionally denying Petitioner's *Martinez* Motion. As set forth below, Petitioner may submit additional documents, from the state court record, to the Court for review within 28 days, at which time the Court will review the documents and, if warranted, reconsider its decision on these motions.

## BACKGROUND

The facts underlying Petitioner's conviction are set forth clearly and accurately in *State v. Brown*, 313 P.3d 751 (Idaho Ct. App. 2013), which is also contained in the record at State's Lodging B-4. The facts will not be repeated here except as necessary to explain the Court's decision.

Petitioner was charged in the First Judicial District Court in Bonner County, Idaho, with first-degree murder, grand theft, and felon in possession of a firearm. Petitioner was represented by counsel, who "filed a number of motions to suppress evidence, including his statements made to Florida police officers and evidence gained from inspection of his mail while he was incarcerated awaiting trial." *Id*. at 756. The trial court denied the motions to suppress. The court also denied Petitioner's motion to dismiss in which he challenged the probable cause finding made at the preliminary hearing. (Supplemental State's Lodging E-1.[1])

---

[1] The State inadvertently labelled two sets of documents as E-1 and E-2. There was an E-1 and E-2 submitted in the initial lodging on August 30, 2017 (*see* Dkt. 10), and an E-1 and E-2 submitted in the supplemental lodging on November 15, 2017 (*see* Dkt. 19). When citing any of these documents, the Court will identify whether they are from the initial or supplemental lodging.

**MEMORANDUM DECISION AND ORDER - 2**

Petitioner, acting pro se, filed an interlocutory appeal from the denial of the probable cause motion. (Supplemental State's Lodging E-2.) The Idaho Supreme Court entered an order conditionally dismissing the appeal, under Idaho Appellate Rule 11, because the appeal was not from a final, appealable Order. (State's Lodging E-3.) Petitioner responded to the conditional dismissal, and the state supreme court entered a final order dismissing the appeal. (State's Lodging E-4, E-6.)

Pursuant to a plea agreement, Petitioner eventually entered a conditional *Alford*[2] plea to voluntary manslaughter and accessory to grand theft. *Brown*, 313 P.3d at 756. Petitioner received a unified sentence of fifteen years in prison with ten years fixed on the manslaughter charge, and a concurrent term of five years in prison on the charge of accessory to grand theft. (State's Lodging A-6 at 941-44.)

Petitioner filed two motions for reduction of sentence pursuant to Idaho Criminal Rule 35—one pro se and one submitted through counsel—arguing that he was entitled to leniency. (*Id*. at 965-66, 971.) At the hearing on Petitioner's Rule 35 motions, Petitioner's argument focused on his request to submit additional evidence in the form of testimony from a pathologist, a firearms expert, and a polygrapher, which, as pointed out by the trial court, were pertinent "to the issues of [Petitioner's] culpability for the crime," not to the appropriateness of the sentence. (State's Lodging A-10 at 6-7, 9-10.) The court stated that

---

[2]     **Error! Main Document Only.**An *Alford* plea is the equivalent of a guilty plea, the only difference being that the defendant is not required to expressly admit guilt. *See North Carolina v. Alford*, 400 U.S. 25, 35 (1970) (holding that it is constitutionally permissible for a court to accept and sentence an individual upon "a plea by which a defendant does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of the case to treat him as if he were guilty.").

the additional evidence Petitioner sought to present "would go to issues of guilt, innocence or guilt, and that was taken care of when we took the plea." (*Id*. at 11.) Therefore, the trial court exercised its discretion to deny the request to present additional evidence and went on to deny the Rule 35 motion. (*Id*. at 11-13.)

Petitioner filed a direct appeal. He argued that the trial court erred in several ways: (1) failing to suppress evidence obtained from Petitioner's nonprivileged mail correspondence while he was in pretrial detention; (2) failing to suppress evidence obtained as a result of Petitioner's arrest based on the alleged dissipation of probable cause found by the magistrate judge; (3) failing to suppress incriminating, and allegedly involuntary, statements that Petitioner made to police following his arrest in Florida; (4) denying Petitioner's request to present testimony, and refusing to consider new evidence, at the hearing on Petitioner's Rule 35 motion; (5) denying Petitioner's motion to dismiss for lack of probable cause at the preliminary hearing; and (6) failing to suppress statements obtained in violation of 18 U.S.C. § 3501(c), which governs the admissibility of confessions in federal prosecutions. (State's Lodging B-1; B-3.)

The Idaho Court of Appeals affirmed in part, vacated in part, and remanded the case back to the trial court. The court of appeals rejected most of Petitioner's claims, but agreed that the prosecution had failed to satisfy its burden to show that Petitioner's incriminating statements made after his arrest were voluntary. *Brown*, 313 P.3d at 759. Rather than granting suppression outright, however, the court of appeals vacated the order denying Petitioner's motion to suppress the statements and remanded "for a new

hearing at which, presumably, the State will present some relevant evidence bearing upon the voluntariness or involuntariness of [Petitioner's] statements to Florida officers. If, on remand, . . . the court denies the suppression motion, [Petitioner's] guilty plea and judgment of conviction need not be disturbed." *Id*. at 431-32.

Petitioner filed a petition for review with the Idaho Supreme Court, arguing that the state should not be allowed a second chance to show that his statements to police were voluntary, that a factual error required reversal, and that the trial court should have granted his motion to suppress the evidence obtained from the nonprivileged mail he sent from jail during pretrial detention. (State's Lodging B-6.) The state supreme court denied the petition for review. (State's Lodging B-7.)

On remand, the trial court held a new suppression hearing and once again denied Petitioner's motion to suppress his statements to police. (State's Lodging C-1 at 131-36; C-3.) Petitioner appealed, arguing that the statements were not voluntary. (State's Lodging D-1.) The Idaho Court of Appeals affirmed, holding that "the State met its burden of proving [Petitioner's] statements were voluntary." *State v. Brown*, 377 P.3d 1098, 1100 (Ct. App. 2016). The Idaho Supreme Court denied review. (State's Lodging D-5.)

Petitioner also filed a pro se petition for post-conviction relief, asserting numerous claims: (1) the trial court erred by not granting Petitioner's Rule 35 motion based on a self-defense theory; (2) the court should have appointed conflict counsel because Petitioner's attorneys had represented Petitioner's wife/co-defendant in prior

proceedings; (3) the trial court erred by not ruling on Petitioner's pro se motions filed while he was represented by counsel; (4) the state improperly destroyed evidence; and (5) Petitioner's counsel rendered ineffective assistance by failing (a) to present a self-defense argument, (b) to adequately present a destruction-of-evidence claim, (c) to appeal the denial of Petitioner's motions to dismiss based on spoliation and lack of probable cause to support a first-degree murder charge, (d) to provide Petitioner with discovery, (e) to communicate with Petitioner, even having him committed to a mental health institution "because they feared him," and (f) to file a motion for consolidation. (Initial State's Lodging E-2 at 1-11.) Petitioner was later appointed counsel. (*Id.* at 41.) Petitioner's attorney then filed an amended petition, asserting only that Petitioner was denied the effective assistance of trial counsel based on counsel's alleged failure (a) to communicate with Petitioner, (b) to present evidence of self-defense, and (c) to preserve evidence regarding self-defense. (*Id.* at 73-78.)

The post-conviction court denied the state's motion for summary dismissal and ordered an evidentiary hearing on Petitioner's ineffective assistance claims. (*Id.* at 101-05.) But the hearing was never held. Instead, Petitioner and the state entered into a stipulation in which Petitioner's post-conviction petition would be dismissed. (*Id.* at 121.) In return, Petitioner would be allowed to supplement his pre-sentence investigation report with an addendum regarding his self-defense claim (including evidence that he and his wife/co-defendant passed polygraph examinations regarding the events surrounding the victim's death), evidently so that this information would be available for Petitioner's

parole hearing. (*Id*. at 121-22, 126.) The court dismissed the post-conviction petition pursuant to the stipulation, and Petitioner did not file an appeal. (*Id*. at 124; Initial State's Lodging E-1.)

In the instant federal habeas corpus petition, Petitioner asserts nine claims.[3] Claim 1 alleges that Petitioner's confession was used against him in violation of the Fifth and Fourteenth Amendments to the United States Constitution. (Dkt. 1 at 6; Dkt. 5 at 2.) Claim 2 alleges that Petitioner's arrest was illegal under the Fourth Amendment. (Dkt. 1 at 7; Dkt. 5 at 2.) Claim 3 asserts a Fourth Amendment violation based on the prosecutor's copying of Petitioner's outgoing mail, while he was in pretrial detention, and the later use of that correspondence against him at trial. (Dkt. 1 at 8; Dkt. 5 at 2.)

Claim 4 alleges that evidence from a dismissed federal prosecution was improperly used against Petitioner in the state prosecution. (Dkt. 1 at 9; Dkt. 5 at 2.) Given that the Petition states Claim 4 was raised on direct appeal (Dkt. 1 at 9), it appears that this claim is based on 18 U.S.C. § 3501(c), which provides that, in a federal prosecution, a confession made more than six hours after arrest of a defendant who is in custody is inadmissible unless the delay "is found by the trial judge to be reasonable

---

[3]      Although most of Petitioner's claims nominally invoke multiple constitutional provisions, such labels are not determinative. For example, in Claim 1, Petitioner cites the Fourth, Sixth, and Fourteenth Amendments (Dkt. 1 at 6), but the allegations in Claim 1—that Petitioner's confession was involuntary and therefore should not have been admitted at trial—actually states a claim under the *Fifth* Amendment, which is incorporated to the states through the Due Process Clause of the Fourteenth Amendment. *See Malloy v. Hogan*, 378 U.S. 1, 6 (1964) ("We hold today that the Fifth Amendment's exception from compulsory self-incrimination is also protected by the Fourteenth Amendment against abridgment by the States.").

Therefore, the Court describes Petitioner's claims with respect to the provisions that actually apply to the stated allegations—not necessarily the provisions cited in the Petition.

considering the means of transportation and the distance to be traveled to the nearest available such magistrate judge or other officer." (*See* State's Lodging B-1 at 29-30 (Petitioner's opening brief on the first direct appeal).)

In Claim 5, Petitioner asserts that the initial charge of first-degree murder was not supported by probable cause, and if Petitioner had been bound over on a lesser charge, he would have received a better plea bargain. (Dkt. 1 at 10; Dkt. 5 at 2.)

Claim 6 is a bit difficult to decipher. When the Court initially reviewed the Petition, it construed Claim 6 as follows:

> Claim 6: Petitioner acted in self-defense and therefore should not have been punished. This Claim may be intended as a sufficiency-of-the-evidence challenge or an assertion that the state was unconstitutionally relieved of its burden of proof. This Claim alleges also that Petitioner was deprived of his right of access to the courts and his right to a fair hearing.

(Dkt. 5 at 2-3.) However, the record now establishes that the Court's previous construction of Claim 6 was incorrect. In the Petition, Petitioner stated that he raised Claim 6 in his Rule 35 motion and on direct appeal. (Dkt. 1 at 11.) At the time the Court undertook its initial review, it did not have the records needed to compare Petitioner's claims in this action to those in the Rule 35 motion and on direct appeal to determine what precisely Petitioner was alleging in Claim 6.

The Court has now reviewed the state court records and agrees with Respondent that Claim 6 should be construed as a state law claim that the trial court abused its discretion in failing to allow Petitioner to present evidence of self-defense in support of

his Rule 35 motion. (*See* Dkt. 12-1 at 21-22; State's Lodging A-10.) Petitioner requested at his Rule 35 hearing that the trial court exercise its discretionary authority to allow additional evidence, which the trial court declined to do. (State's Lodging A-10.) On his first direct appeal, Petitioner, relying entirely on state law, argued that the trial court should have allowed Petitioner to present the additional evidence. (State's Lodging B-1 at 26-28.) Claim 6 clarifies that the evidence sought to be presented at Petitioner's Rule 35 hearing—that is, the testimony of a pathologist, a firearms expert, and a polygrapher—was evidence that might have suggested Petitioner killed the victim in self-defense. (Dkt. 1 at 11.) Therefore, it is now apparent that Claim 6 of the Petition was intended to assert that the trial court should have exercised its discretion, under Idaho law, to accept additional evidence—evidence pertinent to the issue of self-defense—at the Rule 35 hearing.[4]

In Claim 7, Petitioner asserts that the post-conviction court improperly failed to address all of Petitioner's claims during post-conviction proceedings, resulting in a denial of Petitioner's right of access to the courts. (Dkt. 1 at 12; Dkt. 5 at 3.)

The Court previously construed Claim 8 as alleging that the trial court improperly failed to consider Petitioner's pro se motions because he was represented by counsel, which is perhaps best described as a due process claim under the Fourteenth Amendment; the Court construed Claim 9 as alleging that Petitioner's attorneys had a conflict of

---

[4]     When analyzing Respondent's Motion for Partial Summary Dismissal, *see infra*, the Court will also consider Claim 6 in the manner Petitioner has described it in his response to that motion: a claim that (a) the prosecution was relieved of its burden of proof; (b) the state failed to follow its "own laws resulting in a deprivation of liberty"; and (c) Petitioner is actually innocent. (Dkt. 16 at 10.)

interest, under the Sixth Amendment, based on their representation of Petitioner's wife/co-defendant. (Initial Review Order, Dkt. 5, at 2-3.) However, nearly six months after the Court's Initial Review Order, Petitioner asserted, for the first time, that the Court has misconstrued Claims 8 and 9. Notably, it was not until Respondent sought dismissal of these claims as procedurally defaulted that Petitioner objected to the Court's construction.

Petitioner now argues that both of these claims allege ineffective assistance of trial counsel. (Dkt. 16 at 11-12.) On the contrary, the Court has reviewed the Petition and determined that it has correctly construed Claims 8 and 9.

The Petition states that the "legal basis" for Claim 8 was "a violation of 1st, 5th, 6th and 14th Amendments." (Dkt. 1 at 13.) However, as noted above in footnote 3, the labels identified by Petitioner are not controlling as to the construction of his claims. In the first paragraph of the "supporting facts" section of Claim 8, the Petition states clearly that Petitioner's numerous pro se motions "were never ruled upon by the court which denies me access to the court and a denial of a fair hearing." (*Id.* (emphasis added).) This put the Court and Respondent on notice that Petitioner was raising a claim that the *trial court* committed error by not ruling on his pro se motions, not that Petitioner's *counsel* rendered ineffective assistance.

Although the Petition goes on to state that Petitioner's *reason* for filing the motions was that he believed his counsel was ineffective or had a conflict of interest, and that the failure of the trial court to rule on the pro se motions "denie[d] to [Petitioner]

access to the court <u>and</u> [his] right to counsel," Claim 8 does not clearly allege a separate ineffectiveness claim. (Dkt. 1 at 13 (emphasis in original).) *See Rose v. Palmateer*, 395 F.3d 1108, 1112 (9th Cir. 2005) ("Here, although [the petitioner's] Fifth Amendment claim is related to his claim of ineffective assistance [of counsel] . . . , *they are distinct claims with separate elements of proof . . . .*") (emphasis added). Further, if Petitioner had indeed intended Claim 8 to be an ineffective assistance of counsel claim, he would have notified the Court immediately after receiving the Court's Initial Review Order that the Court's construction of Claim 8 was incorrect. He did not, suggesting that Petitioner intended for Claim 8 to assert a due process violation based on trial court error.

As for Claim 9, the Petition states that several of Petitioner's attorneys "<u>all</u> <u>had</u> <u>a</u> conflict of interest because they had represented [his] wife and co-defendant previously." (*Id*. at 14 (emphasis in original).) This is an obvious assertion of a conflict-of-interest claim, rather than a traditional ineffective assistance claim.[5] Petitioner's belated objection to the Court's construction of Claims 8 and 9 does not persuade the Court that those claims should be construed in the manner Petitioner now asserts.

 The Court previously reviewed the Petition and allowed Petitioner to proceed on the above claims to the extent his claims "(1) are cognizable in a federal habeas corpus action, (2) were timely filed in this Court, and (3) were either properly exhausted in state

---

[5]  Ineffective assistance of counsel claims and conflict-of-interest claims are both analyzed under the Sixth Amendment's right to the assistance of counsel in criminal proceedings. *See Strickland v. Washington*, 466 U.S. 668 (1984); *Cuyler v. Sullivan*, 446 U.S. 335 (1980). Further, *Martinez v. Ryan*, 566 U.S. 1 (2012), can be used to excuse the default of both types of Sixth Amendment claims. *Pizzuto v. Ramirez*, 783 F.3d 1171, 1178 (9th Cir. 2015).

court or subject to a legal excuse for any failure to exhaust in a proper manner." (Dkt. 5 at 3 (footnote omitted).)

Respondent now argues that all of Petitioner's claims, with the exception of Claim 1, are subject to dismissal either as procedurally defaulted or as noncognizable. (Dkt. 12-1.) Petitioner argues that some of these claims are not procedurally defaulted, that there is cause and prejudice to excuse the default of some of these claims; further, Petitioner argues he did not have a full and fair opportunity to litigate some of these claims in state court. (Dkt. 14, 16.)

## DISCUSSION

### 1. Petitioner's Request that Respondent Be Required to Submit Additional State Court Records to the Court

Before the Court can consider whether Claims 2 through 9 are subject to dismissal, it must first address Petitioner's contention that the Court lacks the state court records required for that consideration.

Respondent has, in accordance with Rule 5(c) of the Rules Governing Section 2254 Cases ("Habeas Rules") and with this Court's previous orders, lodged with the Court those portions of the state court record that Respondent "considers relevant." Included in the State's Lodging are numerous motions that Petitioner filed in the trial court pro se, even though he was represented by an attorney at the time. Petitioner previously asked the Court to take judicial notice of 43 of these pro se documents, not all of which had been lodged by Respondent. (Dkt. 15.) Respondent asserted that to the

extent any of these 43 documents were not included in the state court record lodged with the Court, they were never made a part of the state court record.

The Court noted that it could not take judicial notice of documents it had not seen. The Court reviewed the record and determined that the record lodged with the Court does—in fact—contain the documents identified in Petitioner's request for judicial notice as Nos. 4-5, 8-11, 13, 17-23, 25-26, and 30. (*See* Dkt. 21 at 2; Dkt. 15.) Further review has confirmed that the Court also has copies of the documents listed as Nos. 27 and 28 in Petitioner's request for judicial notice. (State's Lodging A-2 at 66; A-3 at 310.) Because it previously appeared that Petitioner may have had copies of the rest of the 43 documents at issue, the Court gave Petitioner an opportunity to submit them to the Court. (Dkt. 21 at 2-3.)

Petitioner has now notified the Court that he does not, in fact, have copies of the remaining pro se documents, identified as Nos. 1-3, 6-7, 12, 14-16, 24, 29, and 31-43 in Petitioner's request for judicial notice. (*See* Dkt. 15.) Petitioner has pointed to the state court's Register of Action, which does indeed list the vast majority of the documents Petitioner identifies. Many of the documents are letters, rather than motions requesting that the trial court make a ruling or take an action of any kind. (State's Lodging A-1; Dkt. 22-1.) Given that most of these documents are listed on the Register of Action, they were, at one point, part of the state court record. Whether they are still available from the Bonner County Court Clerk is not clear.

Petitioner asks that Respondent be required to retrieve these documents (if they still exist) and submit them to the Court for review. (Dkt. 22.) However, as Petitioner has already been informed, Respondent is not required to furnish copies of every single document filed in state court—only those Respondent considers relevant, *see* Habeas Rule 5(c), and briefs and opinions during state court appeals, *see* Habeas Rule 5(d). (Dkt. 21 at 1 n.1.) Respondent has done so. Certainly, if Respondent had relied on any of the pro se documents in its summary dismissal briefing, Petitioner would be entitled to copies of them. However, Respondent has not so relied, and Petitioner does not contend that he lacks copies of any of the documents cited in Respondent's summary dismissal briefing or any of the documents to which he is entitled pursuant to Habeas Rule 5(c) and (d).

The Court now turns to Petitioner's specific arguments about these pro se documents. In his response to the Court's January 26, 2018 Order, Petitioner identifies only Claim 6 as potentially being affected by one of these pro se documents. (Dkt. 22 at 2.) Petitioner states he presented Claim 6 in a "self defense Motion" in the trial court and that the court did not rule on the motion. (*Id.*)

To the extent that the "self defense Motion" described by Petitioner in his most recent filing is the same motion Petitioner refers to when he states in the Petition that he raised Claim 6 in his Rule 35 motion, he is incorrect in arguing that the trial court failed to rule on the motion. In Petitioner's Rule 35 proceedings, he asked the court to allow him to present evidence going to his culpability for the crime, which—as the trial court pointed out—would have been properly dealt with at the plea stage, not at the Rule 35

stage. (State's Lodging A-10 at 11.) The trial court denied the request to submit this additional evidence of self-defense and denied the Rule 35 motion, and Petitioner raised that issue on appeal. (State's Lodging B-1 at 26-28.) After the Idaho Court of Appeals rejected the claim, Petitioner failed to include it in his petition for review with the Idaho Supreme Court. (State's Lodging B-6.)

To the extent that Petitioner alleges the self-defense motion he describes in Docket No. 22 raised his claim of self-defense in any way other than his request to submit evidence of self-defense in support of his Rule 35 motion—as set forth in Claim 6—the Court will assume, without deciding, that the trial court did not rule on the motion. However, as explained below in further detail, what matters for purposes of a procedural default analysis is not merely the arguments raised in the trial court—such as those identified in Petitioner's pro se motions—but also the arguments raised on appeal. Therefore, even if the trial court improperly failed to rule on Petitioner's pro se self-defense motion, the question remains whether Petitioner properly raised his self-defense claim to the Idaho appellate courts. And the Court has all the state court records necessary to answer that question.

For the foregoing reasons, the Court concludes that copies of the pro se documents referred to by Petitioner in his response to the Court's January 26, 2018 order are not required for the Court to resolve the questions of procedural default and cognizability currently before it. However, the Court will allow Petitioner 28 days after entry of this Order to supplement the record with copies of any such documents he deems relevant. To

be clear, Respondent is *not* required to retrieve copies of the documents, but Petitioner may obtain them from the state clerk of court, at his own expense, and provide them to the Court for review. If Petitioner submits additional state court records within that time period, the Court will determine whether those records alter the analysis as to whether Claims 2 through 9 are subject to dismissal.

The Court now turns to that analysis.

## 2. Respondent's Motion for Partial Summary Dismissal and Petitioner's Motion for Application of *Martinez v. Ryan*

### A. *Standard of Law Governing Summary Dismissal*

The Habeas Rules authorize a federal court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any attached exhibits," as well as those records subject to judicial notice, "that the petitioner is not entitled to relief in the district court." Habeas Rule 4; *see* Fed. R. Evid. 201(b); *Dawson*, 451 F.3d at 551 n.1. Where appropriate, a respondent may file a motion for summary dismissal, rather than an answer. *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989).

### B. *Other than Claims 1 and 3, All of Petitioner's Claims Are Procedurally Defaulted, and Petitioner Has Not Established Cause and Prejudice, or Actual Innocence, to Excuse the Default*

#### i. Procedural Default Standards of Law

A habeas petitioner must exhaust his or her remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To do so, the petitioner must invoke one complete round of the state's

established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *Id.* at 845. In a state that has the possibility of discretionary review in the highest appellate court, like Idaho, the petitioner must have presented all of his federal claims at least in a petition seeking review before that court. *Id.* at 847. "Fair presentation" requires a petitioner to describe both the operative facts and the legal theories upon which the federal claim is based. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).

The mere similarity between a federal claim and a state law claim, without more, does not satisfy the requirement of fair presentation. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam). General references in state court to "broad constitutional principles, such as due process, equal protection, [or] the right to a fair trial," are likewise insufficient. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). The law is clear that, for proper exhaustion, a petitioner must bring his federal claim before the state court by "explicitly" citing the federal legal basis for his claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *as amended*, 247 F.3d 904 (9th Cir. 2001).

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray*, 518 U.S. at 161-62. Procedurally defaulted claims include those within the following circumstances: (1) when a petitioner has completely failed to raise a claim

before the Idaho courts; (2) when a petitioner has raised a claim, but has failed to fully and fairly present it as a *federal* claim to the Idaho courts; and (3) when the Idaho courts have rejected a claim on an adequate and independent state procedural ground. *Id.*; *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

"To qualify as an adequate procedural ground, a state rule must be firmly established and regularly followed." *Walker v. Martin*, 562 U.S. 307, 316 (2011) (internal quotation marks omitted). That is, the state procedural bar must be one that is "'clear, consistently applied, and well-established at the time of the petitioner's purported default." *Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)). A state procedural bar can be considered adequate even if it is a discretionary rule and "the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Beard v. Kindler*, 558 U.S. 53, 61 (2009). A state rule's "use of an imprecise standard . . . is no justification for depriving a rule's language of any meaning." *Walker*, 562 U.S. at 318 (internal quotation marks and alteration omitted).

A state procedural bar is "independent" of federal law if it does not rest on, and if it is not interwoven with, federal grounds. *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir. 2003) (en banc). A rule will not be deemed independent of federal law "if the state has made application of the procedural bar depend on an antecedent ruling on federal law such as the determination of whether federal constitutional error has been committed." *Id.*

(internal quotation marks and alteration omitted); *see also Ake v. Oklahoma*, 470 U.S. 68, 75 (1985) (stating that "when resolution of the state procedural law question depends on a federal constitutional ruling, the state-law prong of the court's holding is not independent of federal law, and our jurisdiction is not precluded," and holding that a state waiver rule was not independent because, "[b]efore applying the waiver doctrine to a constitutional question, the state court must rule, either explicitly or implicitly, on the merits of the constitutional question").

Once the government sufficiently pleads the existence of an adequate and independent state procedural bar, the burden shifts to the petitioner to establish that the rule is not adequate or is dependent on federal law. "The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Bennett*, 322 F.3d at 586. The ultimate burden to show that the procedural rule is adequate and independent, however, remains with the state.

> ii. <u>Claims 2, 4, 5, 6, 7, 8, and 9 Are Procedurally Defaulted</u>

The most straightforward manner in which to resolve the exhaustion and procedural default status of Petitioner's federal claims is to review which claims were raised and addressed on the merits in the state court appellate proceedings.

Petitioner's first appeal, which he filed before his criminal proceedings were completed, was dismissed under Idaho Appellate Rule 11 because the appeal was not from a final, appealable order. (State's Lodging E-3, E-4.) Respondent has appropriately pleaded that Rule 11 of the Idaho Appellate Rules is adequate and independent, and

Petitioner has not satisfied his burden to show that the rule is not adequate or that it is dependent on federal law. Therefore, no claims were properly raised and decided on the merits in Petitioner's interlocutory appeal.

On his first direct appeal, Petitioner fairly presented three claims: (1) the state should not have been allowed a second chance to show voluntariness of Petitioner's statements; (2) a factual error required reversal; and (3) the trial court should have granted his motion to suppress the evidence obtained from Petitioner's nonprivileged, outgoing mail while he was in pretrial detention. (State's Lodging B-6.) Though Petitioner had also initially raised Claims 2, 4, 5, and 6 on direct appeal, he did not include those claims in his petition for review to the Idaho Supreme Court. (*Id.*; State's Lodging B-1.) Thus, the only claim in the federal Petition that was fairly presented to the highest state court during Petitioner's first direct appeal is Claim 3—that the search of Petitioner's outgoing mail violated the Fourth Amendment.

On his second direct appeal following remand, Petitioner raised a single claim: that his confession was not voluntary and, therefore, should have been suppressed. (State's Lodging D-1.) This claim corresponds to Claim 1 of the federal Petition. Thus, during Petitioner's second direct appeal, Claim 1 was the only claim fairly presented to the highest state court.

Finally, no claims were fairly presented during Petitioner's post-conviction proceedings, because he did not file an appeal from the stipulated dismissal of his post-conviction petition. (Initial State's Lodging E-1; Initial State's Lodging E-2 at 124.)

The only claims that were fairly presented to the Idaho Supreme Court are Claim 1 and Claim 3. Therefore, Claims 2, 4, 5, 6, 7, 8, and 9 are procedurally defaulted.[6] However, this conclusion does not end the inquiry. If a petitioner's claim is procedurally defaulted, a federal district court can still reach the merits of the claim if the petitioner meets one of two exceptions: (1) a showing of adequate legal cause for the default and prejudice arising from the default, or (2) a showing of actual innocence, which means that a miscarriage of justice will occur if the constitutional claim is not heard in federal court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

Neither an assertion of cause and prejudice nor an assertion of actual innocence under *Schlup* is an independent constitutional claim. Rather, these are federal *procedural* arguments that, if sufficiently established by a petitioner, allow a federal court to consider the merits of an otherwise procedurally-defaulted constitutional claim.

  iii.  <u>Cause and Prejudice</u>

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray*, 477 U.S. at 488. To show "prejudice," a petitioner generally bears "the burden of showing not merely that the errors [in his proceeding] constituted a *possibility* of prejudice, but that they worked to his

---

[6]   As stated earlier, the Court construes Claim 6 as asserting that the trial court abused its discretion, under state law, by failing to allow Petitioner to present evidence of self-defense in support of his Rule 35 motion, which was not presented to the state supreme court in Petitioner's petition for review on direct appeal. To the extent Claim 6 can be construed as any other claim, it would still be procedurally defaulted because Petitioner did not fairly present it to the highest state court.

*actual* and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Cause for the default may exist as a result of ineffective assistance of counsel. For example, the failure on appeal to raise a meritorious claim of trial error—or the failure at trial to preserve a claim for appeal—may render that claim procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) ("[I]n certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice."). However, for ineffective assistance of counsel ("IAC") to serve as cause to excuse a default, that IAC claim generally must itself have been separately presented to the state appellate courts. *Id.* ("A claim of ineffective assistance . . . generally must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.") (internal quotation marks and alteration omitted). If the ineffective assistance asserted as cause was not fairly presented to the state courts, a petitioner must show that an excuse for that separate default exists, as well. *Id.* at 453 ("[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted.").

A petitioner does not have a federal constitutional right to the effective assistance of counsel during state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 554 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993). As a result, the general rule is that any errors of counsel during a post-conviction action cannot serve as a basis for cause to excuse a procedural default. *Coleman*, 501 U.S. at 752.

**MEMORANDUM DECISION AND ORDER - 22**

However, the Supreme Court established an exception to that general rule in *Martinez v. Ryan*, 566 U.S. 1 (2012). *Martinez* held that, in limited circumstances, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 9. *Martinez* does not apply to any claims other than claims of ineffective assistance of trial counsel ("IATC"), and it can apply only if the underlying IATC claim is exhausted and procedurally defaulted. *Davila v. Davis*, 137 S. Ct. 2058, 2063 (2017) (holding that *Martinez* does not apply to underlying claims of ineffective assistance of direct appeal counsel); *Hunton v. Sinclair*, 732 F.3d 1124, 1126-27 (9th Cir. 2013) (holding that *Martinez* does not apply to claims under *Brady v. Maryland*).

The Supreme Court has described and clarified the *Martinez* cause and prejudice test as consisting of four necessary prongs: (1) the underlying IATC claim must be a "substantial" claim; (2) the "cause" for the procedural default consists of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" collateral review proceeding where the IATC claim could have been brought[7]; and (4) state law requires that an IATC claim be raised in an initial-review collateral proceeding, or by "design and operation" such claims must be raised that way, rather than on direct appeal. *Trevino v. Thaler*, 569

---

[7]     The *Martinez* exception applies only to claims that were defaulted in the initial-review collateral proceeding—a petitioner may not use, as cause to excuse a default, any attorney error that occurred in "appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Martinez*, 566 U.S. at 16.

U.S. 416, 423, 429 (2013). The failure to meet any of these four prongs means that the *Martinez* exception is unavailable to excuse the procedural default of a claim.

a)       *Ineffective Assistance of Direct Appeal Counsel*

Petitioner appears to argue that some of his procedurally defaulted claims are excused from default because Petitioner's direct appeal counsel rendered ineffective assistance in failing to include these issues in the petition for review. (Dkt. 16 at 6.) However, Petitioner never separately presented a claim of ineffective assistance of direct appeal counsel to the Idaho appellate courts as required by *Edwards*, 529 U.S. at 452-53. Therefore, ineffective assistance of direct appeal counsel cannot be used to excuse the default of any of Petitioner's claims. Though Petitioner attempts to use *Martinez v. Ryan* to establish an excuse for his failure to fairly present a direct appeal counsel ineffectiveness claim, the Supreme Court has held that *Martinez* does not apply to such claims. *See Davila*, 137 S. Ct. at 2063.

b)       *Ineffective Assistance of Post-Conviction Review Counsel*

In his Motion for Application of *Martinez v. Ryan* and in his response to the Motion for Partial Summary Dismissal, Petitioner asserts that *Martinez* applies to excuse the procedural default of his claims. (Dkt. 14, 16.) However, the only claim even potentially subject to a *Martinez* analysis is Claim 9—that Petitioner's counsel had a conflict of interest because they previously represented Petitioner's co-defendant. *See Pizzuto*, 783 F.3d at 1178 (holding that *Martinez* applies to conflict-of-interest claims).

The rest of Petitioner's claims are not subject to *Martinez* because they are neither traditional IATC claims nor conflict-of-interest claims.[8]

As for Claim 9, Petitioner offers no credible evidence to support his *Martinez* argument that Claim 9 is substantial or that his post-conviction counsel rendered ineffective assistance in failing to raise this claim in the post-conviction petition. Further, the default of this claim was caused not by any failure to raise it in the initial petition, but because Petitioner agreed, through mediation, to dismiss his post-conviction petition and he did not appeal from that dismissal. Any failure on the part of Petitioner or of post-conviction counsel to appeal the mediated dismissal does not constitute cause because, as the Supreme Court stated in *Martinez*, that exception does not apply to "appeals from initial-review collateral proceedings." *Martinez*, 566 U.S. at 16.

For these reasons, the default of Petitioner's claims is not excused by the *Martinez v. Ryan* exception.

iv.    Actual Innocence

If a petitioner cannot show cause and prejudice for his procedural default, he still can bring the claim in a federal habeas petition if he demonstrates that failure to consider the claim will result in a "fundamental miscarriage of justice," which means that a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Murray v. Carrier*, 477 U.S. at 496. Actual innocence in this context

---

[8]    Even if the Court considered Claim 8 to be an ineffective assistance of counsel claim, Petitioner has not shown that he is entitled to application of the *Martinez* exception, for the same reasons set forth with respect to Claim 9.

"means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

In asserting actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A procedurally defaulted claim may be heard under the miscarriage-of-justice exception only if, "in light of all of the evidence, '. . . no reasonable juror would have found [the petitioner] guilty beyond a reasonable doubt.'" *United States v. Avery*, 719 F.3d 1080, 1083 (9th Cir. 2013) (quoting *Schlup*, 513 U.S. at 327). Stated another way, it must be more likely than not that *every* reasonable juror would vote to acquit. *Jenkins v. Hutton*, 137 U.S. 1769, 1772 (2017) (per curiam) (citing *Sawyer v. Whitley*, 505 U.S. 333 (1992), for the clear and convincing evidence standard).

This is an extremely demanding standard that "permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting Schlup, 513 U.S. at 327). A court considering whether a petitioner has established actual innocence must consider "all the evidence, old and new, incriminating and exculpatory, admissible at trial or not." *Lee v. Lampert*, 653 F.3d 929, 938 (9th Cir. 2011) (en banc) (internal quotation marks omitted). Although "habeas petitioners who assert convincing actual-innocence claims [need not] prove diligence to cross a federal court's threshold," a court "'may consider how the timing of the submission and the likely credibility of a petitioner's

affiants bear on the probable reliability of evidence of actual innocence.'" *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1935 (quoting *Schlup*, 513 U.S. at 332) (alterations omitted).

The actual innocence inquiry "does not turn on discrete findings regarding disputed points of fact, and '[i]t is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses.'" *House*, 547 U.S. at 539-40 (quoting *Schlup*, 513 U.S. at 329 (alteration in original)). Rather, the court must "make a probabilistic determination about what reasonable, properly instructed jurors would do." *Schlup*, 513 U.S. at 329.

Petitioner has offered no new, credible evidence that he is actually innocent. Therefore, Petitioner has not established an excuse for the procedural default of his claims.

### C.     *Claims 2, 3, 6, and 7 Are Subject to Dismissal Because They Are Not Cognizable in this Federal Habeas Corpus Action*

#### i.     Claims 2 and 3 Are Noncognizable Pursuant to *Stone v. Powell*

Claims 2 and 3 are Fourth Amendment claims. In *Stone v. Powell*, the United States Supreme Court held that, so long as the state provided the petitioner an opportunity for full and fair litigation of his Fourth Amendment claim in state court, a federal court cannot grant habeas corpus relief on the ground that evidence was obtained in violation of the Fourth Amendment. 428 U.S. 465, 494 (1976). The *Stone* doctrine is based on the principle that the exclusionary rule is "not a personal constitutional right" but is instead a practical way to deter police conduct that violates the Fourth Amendment. *Id.* at 486. The social costs of the exclusionary rule are heavy: the rule "deflects the truthfinding process

and often frees the guilty." *Id.* at 490. On collateral review of a criminal conviction, "the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force." *Id.* at 494-95.

To determine whether a petitioner had a full and fair opportunity to challenge his Fourth Amendment claim in state court, a federal court "inquire[s] into the adequacy and fairness of available state court procedures for the adjudication of Fourth Amendment claims." *Sanna v. Dipaolo*, 265 F.3d 1, 8 (1st Cir. 2001). If the Court determines that the state court procedures are adequate, the inquiry ends there. *Id.* at 8-9. That is, "[s]o long as a state prisoner has had an opportunity to litigate his Fourth Amendment claims by means of such a set of procedures, a federal habeas court lacks the authority, under *Stone*, to second-guess the accuracy of the state court's resolution of those claims." *Id.* at 9. Stated another way, "[t]he relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996). Petitioner bears the burden of establishing that the state courts did not consider his Fourth Amendment claims fully and fairly. *Mack v. Cupp*, 564 F.2d 898, 901 (9th Cir. 1977).

Here, Petitioner acknowledges that he filed a motion to dismiss based on Claim 2, showing that Idaho allows such motions to be filed in the trial court. However, Petitioner contends that, because the trial court did not rule that motion, he did not have a fair opportunity to litigate his Fourth Amendment claim. (Dkt. 16 at 4.) However, Petitioner

initially raised a similar claim on appeal. (State's Lodging B-1 at 11 (arguing that the trial court should have granted a motion to suppress evidence "obtained as the result of his arrest because the material exculpatory information discovered after the issuance of the arrest warrant undermined the magistrate's probable cause finding." (capitalization regularized)).) The Idaho Court of Appeals rejected the claim, and Petitioner could have—but did not—raise it in his petition for review with the Idaho Supreme Court. Therefore, Claim 2 is subject to dismissal not only because it is procedurally defaulted, but because it is not cognizable.

As for Claim 3, Petitioner pursued this claim all the way to the Idaho Supreme Court. Therefore, it is clear that the State of Idaho gave Petitioner a full and fair opportunity to litigate that claim, and *Stone* bars that claim from being addressed in this federal forum.

For the foregoing reasons, Claims 2 and 3 are not cognizable in this action and must be dismissed.

ii.  Claims 6 and 7 Are Noncognizable Because They Are Not Based on Federal Law

In addition to being procedurally defaulted, Claim 6—interpreted, as explained above, as a claim that the trial court should have exercised its discretion under Idaho law to accept, at the Rule 35 hearing, additional evidence pertaining to the issue of self-defense—is not cognizable because it is based entirely on Idaho state law. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (holding that "federal habeas corpus relief does not lie for errors of state law").

Alternatively, even if Claim 6 is construed the way Petitioner now asserts it should be construed, the claim is still subject to dismissal. As noted previously, Petitioner now contends that Claim 6 was intended to assert claims that (a) the prosecution was relieved of its burden of proof, (b) the State of Idaho failed to follow its "own laws resulting in a deprivation of liberty," and (c) Petitioner is actually innocent. (Dkt. 16 at 10.)

The first portion of this claim—that the prosecution was relieved of its burden of proof—is a federal claim under the Due Process Clause, but (as explained above) it is procedurally defaulted and no excuse for the default exists. The second portion of the claim is not cognizable because it alleges violations of state, not federal, law. *See Lewis*, 497 U.S. at 780. Finally, any claim that Petitioner is actually innocent does not allege an independent constitutional claim. *See Herrera v. Collins*, 506 U.S. 390, 404-05 (1993) ("[O]ur habeas jurisprudence makes clear that a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.").

In Claim 7, Petitioner asserts that the state court did not address all of Petitioner's claims during post-conviction proceedings. (Dkt. 1 at 12; Dkt. 5 at 3.) However, claims of error during state post-conviction proceedings are claims of violations of state law and, therefore, cannot be pursued on federal habeas review. *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989) (per curiam).

For the reasons set forth above, Claims 6 and 7 are subject to summary dismissal not only because they are procedurally defaulted, but also because they are noncognizable.

## CONCLUSION

For the foregoing reasons, Claims 2 through 9 are subject to dismissal, either as procedurally defaulted or noncognizable.

## ORDER

**IT IS ORDERED:**

1.    Respondent's Motion for Partial Summary Dismissal (Dkt. 12) is CONDITIONALLY GRANTED.

2.    Petitioner's Motion for Application of *Martinez v. Ryan* (Dkt. 14) is CONDITIONALLY DENIED.

3.    Within 28 days after entry of this Order, Petitioner may supplement the record with copies of any documents from the state court record that he believes are relevant to the issues discussed in this Order. If Petitioner does so, the Court will then consider whether to finally dismiss Claims 2 through 9.

DATED: March 26, 2018

Honorable Candy W. Dale
United States Magistrate Judge