UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

KEITH A. BROWN,

                Petitioner,

    v.

ALBERTO RAMIREZ,

                Respondent.

Case No. 1:17-cv-00093-CWD

**MEMORANDUM DECISION AND ORDER**

Pending before the Court is a Petition for Writ of Habeas Corpus filed by Idaho prisoner Keith A. Brown ("Petitioner" or "Brown"), challenging Petitioner's state court convictions of voluntary manslaughter and accessory to grand theft. (Dkt. 1.) The Court previously dismissed Claims 2 through 9 of the Petition as procedurally defaulted or noncognizable. (Dkt. 23, 27.) Petitioner asks that the Court reconsider its dismissal of Claims 5 and 6. (Dkt. 34.)

Additionally, Claim 1, the only remaining claim, is now fully briefed and ripe for adjudication. The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by Respondent. (Dkt. 10, 19, 29.) *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006).

All parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Dkt. 8.) Having carefully reviewed the record in this matter,

including the state court record, the Court concludes that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order denying habeas corpus relief on Petitioner's remaining claim and dismissing this case with prejudice.

## BACKGROUND

Under 28 U.S.C. § 2254(e)(1), The following facts of Petitioner's case, as described by the Idaho Court of Appeals, are presumed correct absent clear and convincing evidence to the contrary:

> This case began in February 2007, when Bonner County sheriff's officers were alerted to an abandoned truck. The keys were with the truck, which was registered to Les Breaw, along with Breaw's wallet, checkbook, legal papers, and several pieces of mail. There were no debit or credit cards in the wallet. When officers checked at Breaw's home, it looked as though he had stepped out and planned to return, but the snow-covered driveway showed no signs of recent traffic. Concerned for Breaw's safety, the officers began investigating to determine when he was last seen. They were told by a neighbor that one of Breaw's other neighbors, Keith Brown, was last seen hurriedly packing for a trip around the time Breaw was last seen, and that Brown had not been seen since. Officers also learned that neither Brown, who worked for Breaw, nor Brown's wife, Tyrah Brown, had picked up their most recent paychecks. While investigating Breaw's recent bank card activity, officers also discovered a security video from a local store which appeared to show Brown using Breaw's debit card. When the store clerk was later asked about the incident, the clerk remembered it clearly because Brown did not know how to use the debit card and did not know the debit card's pin number.
>
> Because of the suspicious circumstances surrounding Breaw's and Brown's disappearance and the possibly illegal debit card activity, an officer applied to a magistrate for a search warrant and a warrant to arrest Brown for theft of the debit card. The

officer testified in support of the warrant, and gave the magistrate the details of the suspicious use of the debit card and the circumstances surrounding Breaw's and Brown's disappearance. He also reported to the magistrate that both Brown and Tyrah had extensive criminal records, including arrests for identity theft. After considering the evidence, the magistrate found probable cause, and both a search warrant for the Brown residence and a warrant authorizing Brown's arrest for grand theft were issued on February 7, 2007.

Although the arrest warrant was issued on suspicion of only theft of the bank card, over the next few weeks officers uncovered more incriminating information about Brown and Tyrah, including information that an escrow check for $50,000 payable to Breaw had been deposited into a bank account held by Tyrah. Tyrah had opened the account on January 22, 2007, and deposited the check two days later. Within a week, all of the $50,000 had been withdrawn from the account. Officers also learned that around the time of the suspicious debit card transaction, a man and woman had gone to some of Breaw's renters to collect rent, allegedly on behalf of Breaw. One renter who had paid in cash remembered the incident because Breaw called the next day claiming that he had never received the rent money. Officers learned from Tyrah's co-workers that she had made inconsistent statements about Breaw having travel plans. She told one individual that the Browns were going to take Breaw to the airport in Seattle, from which he would fly to Thailand to pick up a sailboat, and told another person that the Browns were going to drive Breaw to Oregon.

As part of the investigation, an officer contacted Tyrah's mother, Rebekah Harding. Harding said that she had left with the Browns in late January, but Brown purchased a new car in Montana and left Harding with Brown's old car at a hotel. During Harding's initial conversation with an officer on February 8, she was reluctant to believe that anything illegal had occurred. She said that Breaw was not missing because he had gone to California to "dig clams" and visit his mother. She also said that Brown had permission to use Breaw's debit card, and explained that Breaw was a poor bookkeeper, so the incident with missing rent money had been a misunderstanding. The next day, however, Harding called the

officer because of a phone call that she received from Tyrah earlier that morning. Harding reported that although the conversation started off casually, when Harding told Tyrah that she had been questioned by a law enforcement officer the preceding day, the phone line went dead. Harding then suspected that Brown had done something to Breau. Harding eventually admitted that Brown had given her $7,000 before leaving her in Montana.

On March 19, a body was found hidden under a pile of brush and snow a short distance from the location where Brown's truck had been left. Although officers suspected that the body was Breau, they were not able to confirm the identity until an autopsy on March 21. During the autopsy the missing debit card was found in the decedent's pocket.

On March 20, the day after the body was found, Brown was arrested in Florida on a fugitive warrant from Idaho. Before he was extradited to Idaho on the grand theft charge, Brown and Tyrah were interviewed by Florida law enforcement officials. In these interviews, the Browns made a number of incriminating statements. When asked about Breau's $50,000 escrow check, Brown claimed that the money was owed to him because of services he had rendered Breau, but eventually Tyrah confessed to forging Breau's name on the escrow check. Tyrah also confessed to shooting Breau and hiding his body. According to Tyrah, she had done it because Breau had raped her. When Brown was told that his wife had confessed, he also confessed to killing Breau and told officers that Tyrah was not there. According to Brown, he and Breau had gone shooting that day, and during the outing Breau offered Brown the escrow check so that Brown would forgive Breau for Breau's sexual misconduct with Tyrah. Breau continued, however, to make disparaging remarks about Tyrah, which ultimately prompted Brown to shoot Breau. Brown said that he buried Breau in the snow and hid the murder weapon nearby. Brown even drew a map to the gun's location to persuade officers that Tyrah was not involved. By the next day, however, Brown's story had changed. He recanted his story about killing Breau and instead told the Florida officers that shooting Breau had been an accident. He claimed that Breau had first shot Brown in

the leg, which then caused Brown to accidentally shoot
Breaw in the head.

*State v. Brown*, 313 P.3d 751, 754-56 (Idaho Ct. App. 2013) (*Brown I*) (footnote

omitted); *see* 28 U.S.C. § 2254(e)(1).

In the First Judicial District Court in Bonner County, Idaho, Petitioner was

charged with first-degree murder and grand theft, as well as being a felon in possession of

a firearm. Petitioner filed a motion to suppress his initial statements to Florida law

enforcement officers, which the trial court denied. Pursuant to a plea agreement,

Petitioner entered an *Alford* plea[1] to voluntary manslaughter and accessory to grant theft.

*Id.* at 756.

Petitioner appealed, claiming, in pertinent part, that his statements to the Florida

police were involuntary. (State's Lodging B-1 at 26 ("Mr. Brown asserts that the district

court erred when it concluded that his statements were voluntarily made in the absence of

any evidence establishing the circumstances under which those statements were

obtained.").) The Idaho Court of Appeals held that the prosecution had failed to meet its

burden of showing that the statements were voluntary, apparently due to the prosecutor's

mistaken belief that Petitioner, and not the state, bore the burden of proof. *Brown*, 313

P.3d at 759–60. However, rather than adopting Petitioner's proposed remedy—remand

for entry of a suppression order, which would allow Petitioner to withdraw his guilty

---

[1] *See North Carolina v. Alford*, 400 U.S. 25, 35 (1970) (holding that it is constitutionally permissible for a court to accept and sentence an individual upon "a plea by which a defendant does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of the case to treat him as if he were guilty.").

plea—the court of appeals remanded the matter for further factual development at a new suppression hearing to determine whether the statements were voluntary.

Petitioner then filed a petition for review with the Idaho Supreme Court, arguing that the state should not be allowed a second chance to show that his incriminating statements were voluntary. Instead, he asserted, because the prosecution had failed to meet its burden of proof, the court of appeals should have remanded with instructions to enter a suppression order. (State's Lodging B-6 at 7-14.) The Idaho Supreme Court denied the petition for review without discussion. (State's Lodging B-7.)

The trial court held a new suppression hearing on remand. (State's Lodging C-3.) The videos of both of Petitioner's police interviews, as well as the police interview of Petitioner's wife, were introduced at the hearing.[2] (*Id*. at 30-32.) The trial court held that Petitioner's statements were voluntary and denied Petitioner's motion to suppress. (State's Lodging C-1 at 131-36.)

Petitioner appealed, again arguing that his statements to Florida police were involuntary because they were coerced by the police. (State's Lodging D-1 at 8 ("Mr. Brown asserts that his confession was the product of psychological coercion by Detective Long, who manipulated Mr. Brown's immense concern for his wife and any adverse consequences to her due to her confession to the same crime.").) The Idaho Court of Appeals affirmed, concluding that the statements were voluntary. *State v. Brown*, 377

_____

[2] The video of the police interview of Petitioner's wife was admitted at the request of Petitioner. (State's Lodging C-3 at 31-32.)

P.3d 1098 (Idaho Ct. App. 2016) (*Brown II*). The Idaho Supreme Court denied review. (State's Lodging D-5.)

Petitioner filed the instant Petition in March 2017. The Court previously dismissed Claims 2 through 9, leaving only Claim 1 for adjudication on the merits. (*See* Dkt. 23, 27).

## PETITIONER'S MOTION FOR RECONSIDERATION

Petitioner asks the Court to reconsider its previous dismissal of Claims 5 and 6. The Court dismissed Claim 5 as procedurally defaulted and dismissed Claim 6 as both procedurally defaulted and noncognizable. (Dkt. 23 at 19–27, 29–30; Dkt 27.)

The Court has the "inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (internal quotation marks and emphasis omitted). *See* Habeas Rule 12 ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."). Although courts have authority to reconsider prior orders, they "should be loath to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 n. 8 (1983)).

The Court does not find sufficient cause to reconsider its dismissal of Claims 5 and 6. Petitioner's arguments for reconsideration are not persuasive, because they

(1) could have been raised before the Court's previous decision dismissing the claims, (2) do not address the Court's alternative basis for dismissal, or (3) constitute a mere disagreement with the Court's analysis—a matter for appeal, not reconsideration. Because Petitioner has not shown that the Court's dismissal of Claims 5 and 6 was clearly erroneous or that it will work a manifest injustice, the motion for reconsideration will be denied.

## DISCUSSION OF CLAIM 1

Claim 1 of Petitioner's federal habeas petition consists of two subparts.[3] Claim 1(a) is the same claim Petitioner raised to the Idaho Supreme Court in his petition for review in his initial direct appeal—that the state should not have been allowed a second chance to prove the voluntariness of Petitioner's statements. The Court presumes that the Idaho Supreme Court rejected this claim on the merits when it summarily denied the petition for review in that appeal. (State's Lodging B-7.) *See Harrington v. Richter*, 562 U.S. 86, 99 (2011) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Claim 1(b) asserts that Petitioner's statements to Florida police were involuntary and, therefore, should have been suppressed as obtained in violation of the Fifth

---

[3] Though the Court previously broadly referred to Claim 1 without breaking it into subparts, Respondent correctly points out that Petitioner makes two separate, but related, arguments in Claim 1. Petitioner has not contested Respondent's construction of Claim 1.

Amendment, because (i) Petitioner was not of sound mind when he entered his plea, and (ii) the police coerced the statements by threatening to prosecute Petitioner's wife.[4] The Idaho Court of Appeals rejected Claim 1(b) on the merits in Petitioner's second direct appeal following the initial remand. *Brown II*, 377 P.3d at 1101–02.

For the following reasons, the Court concludes that Petitioner is not entitled to relief on the merits of Claim 1(a) or Claim 1(b).

### 1. Habeas Corpus Standard of Law

Federal habeas corpus relief may be granted when a federal court determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). If the state court has adjudicated a claim on the merits, habeas relief is further limited by § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, federal habeas relief may be granted only where the state court's adjudication of the petitioner's claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[4] Though the Petition itself expressly asserts only the first basis of the claim of involuntariness, the Court construes Claim 1(b) as also including the argument that police coerced the statements by threatening to prosecute Petitioner's wife. Respondent has addressed the coercion sub-claim in briefing, and Petitioner raised both sub-claims in his second direct appeal following the new suppression hearing. (State's Lodging D-1 at 13–14 ("Mr. Brown submits that the totality of the circumstances demonstrates Detective Long took advantage of Mr. Brown's vulnerable mental state and his desire to protect his wife after her rape, miscarriage, and possible criminal charges to obtain his confession.").)

28 U.S.C. § 2254(d). "Deciding whether a state court's decision involved an unreasonable application of federal law or was based on an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims and to give appropriate deference to that decision." *Wilson v. Sellers*, 138 S. Ct. 1188, 1191–92 (2018) (internal quotation marks and citations omitted).

When a party contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests: the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court] [has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1), the petitioner must show that the state court—although identifying "the correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014) (emphasis omitted).

A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. If there is any possibility that fair-minded jurists could disagree on the correctness of the state court's decision, then relief is not warranted under § 2254(d)(1). *Richter*, 562 U.S. at 102. The Supreme Court has emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* To be entitled to habeas relief under § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

AEDPA deference is required even where, as here, the highest state court denied the petitioner's claim without expressly addressing it. In such a case, the Court must "'look through' the unexplained decision to the last related state-court decision that ... provide[s] a relevant rationale." *Wilson*, 138 S. Ct. at 1192. The Court may then presume—though this presumption can be rebutted—that "the unexplained decision adopted the same reasoning." *Id.*

If there is no reasoning provided by any state court, the Court presumes that the state court adjudicated all fairly-presented claims on the merits unless there is some "indication or state-law procedural principle[] to the contrary." *Richter*, 562 U.S. at 99.

When a court applies the *Richter* presumption, it must "conduct an independent review of the record to determine what arguments or theories could have supported the state court's decision"; the court must then determine "whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a decision of the Supreme Court." *Bemore v. Chappell*, 788 F.3d 1151, 1161 (9th Cir. 2015) (internal quotation marks and alterations omitted); *see also Rowland v. Chappell*, 876 F.3d 1174, 1181 (9th Cir. 2017) ("Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." (internal quotation marks and citation omitted)). A summary decision of a state court is entitled to "meaningful deference," and a federal court must "consider reasonable grounds that could have supported" that decision. *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2557 (2018) (per curiam).

Though the source of clearly established federal law must come only from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 2000). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013).

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). Therefore, evidence that was not presented to the state court cannot be introduced on federal habeas review if a claim was adjudicated on the merits in state court and if the underlying factual determinations of the state court were reasonable. *See Murray v. Schriro*, 745 F.3d 984, 999-1000 (9th Cir. 2014); ("After *Pinholster*, a federal habeas court may consider new evidence only on de novo review, subject to the limitations of § 2254(e)(2)."); *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014) ("If we determine, considering only the evidence before the state court, that the adjudication of a claim on the merits ... was based on an unreasonable determination of the facts, we evaluate the claim de novo, and we may consider evidence properly presented for the first time in federal court.").

To be eligible for relief under § 2254(d)(2), the petitioner must show that the state court decision was based upon factual determinations that were "unreasonable ... in light of the evidence presented in the State court proceeding." A "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."). State court factual findings are presumed to be correct and are binding on

the federal court unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

If a petitioner satisfies § 2254(d)—either by showing that the state court's adjudication of the claim was contrary to, or an unreasonable application of Supreme Court precedent or by establishing that the state court's factual findings were unreasonable—then the federal habeas court must review the petitioner's claim de novo, meaning without deference to the state court's decision. *Hurles*, 752 F.3d at 778. De novo review is also required where the state appellate court did not decide a properly-asserted claim or where an adequate excuse for the procedural default of a claim exists. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002); *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc).

When considering a habeas claim de novo, a district court may, as in the pre-AEDPA era, draw from both United States Supreme Court and well as circuit precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989). Even under de novo review, however, if the factual findings of the state court are not unreasonable under § 2254(d)(2), the Court must apply the presumption of correctness found in 28 U.S.C. § 2254(e)(1) to any facts found by the state courts. *Pirtle*, 313 F.3d at 1167-68. Conversely, if a state court factual determination is unreasonable, the federal court is not limited by § 2254(e)(1) and may consider evidence outside the state court record, except to the extent that § 2254(e)(2) might apply. *Murray v. Schriro*, 745 F.3d at 1000.

Even if a petitioner succeeds in demonstrating a constitutional error in his conviction, he is entitled to federal habeas relief only if the petitioner "can establish that [the error] resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Under the *Brecht* standard, an error is not harmless, and habeas relief must be granted, only if the federal court has "grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (internal quotation marks omitted).

**2.      Clearly Established Law Governing Claim 1**

The introduction at trial of an involuntary confession violates the Constitution's protection against compelled self-incrimination. U.S. Const., amend. V, XIV. Therefore, if a statement made by a defendant was coerced by police, the statement may not be used against the defendant at trial. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986) ("We hold that coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment.").

If a statement is "the product of an essentially free and unconstrained choice by its maker," then it is voluntary. *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973). Conversely, a statement is involuntary if the defendant's "will [was] overborne and his capacity for self-determination critically impaired." *Id.* The prosecution has the burden of establishing the voluntariness of the challenged statement. *Lego v. Twomey*, 404 U.S. 477, 489 (1972) ("[W]hen a confession [is] challenged as involuntary…, the prosecution must prove…by a preponderance of the evidence that the confession was voluntary.").

Unconstitutional police coercion "can be mental as well as physical, and the blood of the accused is not the only hallmark of an unconstitutional inquisition." *Arizona v. Fulminante*, 499 U.S. 279, 287 (1991) (internal quotation marks and alteration omitted).

The question of whether a statement is involuntary due to coercive police activity requires consideration of the "totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Bustamonte*, 412 U.S. at 226. Relevant factors include the following: (1) the youth of the accused; (2) the intelligence and level of education of the accused; (3) the lack of advice regarding the accused's constitutional rights, such as *Miranda* warnings; (4) the length of the detention, (5) the "repeated and prolonged nature of the questioning"; and (6) "the use of physical punishment such as the deprivation of food or sleep." *Id*. Though none of these factors is dispositive, the presence or absence of *Miranda* warnings is especially significant. *See Berkemer v. McCarty*, 468 U.S. 420, 433 n.20 (1984) ("We do not suggest that compliance with *Miranda* conclusively establishes the voluntariness of a subsequent confession. But cases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare.").

### 3. The Idaho Supreme Court's Rejection of Claim 1(a) Was Not Unreasonable under AEDPA

Petitioner presented Claim 1(a) to the Idaho Supreme Court, which summarily denied the petition for review. The Idaho Court of Appeals did not consider the claim, nor could Petitioner raise it before that intermediate appellate court, because the factual

basis for the claim did not exist until the Court of Appeals issued its decision remanding the case for a new suppression hearing. Because there is no indication of any state-law procedural principle that would have applied to bar the claim, the Court presumes that the Idaho Supreme Court rejected Claim 1(a) on the merits. *See Richter*, 562 U.S. at 99.

The Idaho Court of Appeals agreed with Petitioner that the prosecution had failed to meet its burden of proof to show that Petitioner's statements to Florida police were voluntary. The court found that the prosecutor mistakenly believed that Petitioner bore the burden of proof, because the prosecutor pointed out the absence of evidence regarding the interrogation and "presented no evidence about the circumstances of the interrogations or Brown's mental acuity at the time." *Brown I*, 313 P.3d at 759. The court also noted that Petitioner had not specifically argued that the police engaged in coercive tactics—a requirement for exclusion of the statements, *see Connelly*, 479 U.S. at 167— but rather only that Petitioner was of "unsound mind" and "incompetent" at the time of the interrogation. *Id*. at 758.

The state court held that, even though it was the prosecution's burden to prove voluntariness, the lack of any evidence of police coercion in the record did not justify a remand to vacate the guilty plea and issue an immediate suppression order. Instead, the court remanded for a new suppression hearing to determine whether Petitioner's statements were voluntary:

> Although we are mindful that it was the State which failed in its burden of proof, we are unwilling to hold that Brown is thereby entitled to a windfall in the form of a suppression order in the absence of any allegation or evidence that the

Florida police used coercive tactics. As we said in *State v. Bower*, 135 Idaho 554, 558, 21 P.3d 491, 495 (Ct. App. 2001): "Use of the exclusionary rule imposes a price upon society in that it often enables the guilty to escape prosecution. Therefore, the exclusionary rule should be employed only when there has *in fact been a violation of the defendant's constitutional rights.*" An evidentiary vacuum does not enable a court to make the necessary findings. In this circumstance, we are constrained to vacate the order denying Brown's suppression motion and remand for a new hearing at which, presumably, the State will present some relevant evidence bearing upon the voluntariness or involuntariness of Brown's statements to Florida officers. If, on remand, the district court grants Brown's suppression motion, he must be allowed the opportunity to withdraw his guilty plea and have his judgment of conviction set aside. If however, on remand, the court denies the suppression motion, Brown's guilty plea and judgment of conviction need not be disturbed. Because the issue has come before this Court on a conditional plea preserving Brown's right to appeal the denial of his suppression motion, we expressly state that because we are remanding for further proceedings on the motion, Brown has not yet "prevailed" on this issue. That is, we are not granting suppression of Brown's confessions, which is the relief he sought in this appeal. Therefore, he has no immediate right to withdraw his plea ….

*Brown*, 313 P.3d at 759-60.

Petitioner argues that there is "no case authority that provides to the State a second chance to prove voluntariness." (Dkt. 31 at 5.) However, that is not the question under AEDPA. Instead, this Court must ask whether United States Supreme Court precedent clearly establishes that the Constitution *prohibits* an appellate court from doing so. The Court has not found any Supreme Court case prohibiting a state appellate court from remanding a case for a new suppression hearing if the prosecution failed initially to meet its burden of showing that a confession was voluntary. Therefore, the Idaho Supreme

Court's decision was not unreasonable under § 2254(d), and Petitioner is not entitled to relief on Claim 1(a).

**4.     The Idaho Court of Appeals' Rejection of Claim 1(b) Was Not Unreasonable under AEDPA**

Claim 1(b) asserts that Petitioner's statements to the police were involuntary because (i) he was mentally ill and (ii) police coerced the statements by threatening to prosecute Petitioner's wife.

In claiming involuntariness arising from his mental state, Petitioner relies on the fact that he had been committed to a mental hospital and found to be incompetent to stand trial. Claim 1(b)(i) fails on the merits—and would under any standard of review, whether AEDPA deference or de novo—because "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment. *Connelly*, 479 U.S. at 167.

The defendant in *Connelly* approached a police officer without prompting and confessed to murder. He claimed that he heard voices telling him that he should confess. The Supreme Court held that the confession was voluntary and could be used against the defendant at trial: "Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Id*. at 164. Because Petitioner's impaired mental health was not caused by police conduct, Petitioner is not entitled to relief on Claim 1(b)(i).

As for Claim 1(b)(ii), asserting that the threats to prosecute Petitioner's wife constituted police coercion rendering the statements involuntary, the Idaho Court of

Appeals concluded that the totality of the circumstances showed that Petitioner's will was not overborne. The court relied on two of its previous decisions for the proposition that "a suspect's confession is not involuntary merely because it was motivated by the desire to prevent a good faith arrest of a loved one" and that a threat of prosecution can point toward a finding of involuntariness only if the threat is unjustified as unsupported by probable cause. *Brown II*, 377 P.3d at 1101.

Noting that Petitioner's wife had confessed to killing Breaw and hiding the body, the state court held that the threat to prosecute her was justified. The court also relied on the trial court's findings at the suppression hearing to conclude that the statements were voluntary considering the totality of the circumstances:

> [T]he district court concluded that the State met its burden of proving Brown's statements were voluntary. The court found the facts of the interrogation itself weighed in favor of voluntariness: Brown was given *Miranda* warnings; he was not deprived of food or sleep; the interrogation was not unduly long; and the interrogating officer was "low key" and nonthreatening. The court also found that Brown's intelligence and psychological characteristics weighed in favor of voluntariness. As to Brown's claim that his statements were involuntary due to the interrogating officer's threats to arrest Brown's wife if he did not confess, the court found that any such threat, either express or implied, would have been made in good faith, and thus would not render Brown's confession involuntary.

*Brown II*, 377 P.3d at 1100–01. The state appellate court found that—other than the threat to prosecute Petitioner's wife—the police had not engaged in any potentially coercive behavior. Therefore, "[a]bsent any other evidence of police coercion, Brown's

self-incriminating statements were not involuntary merely because they were motivated by his desire to protect his wife from prosecution." *Id*. at 1101–02.

The Idaho Court of Appeals' rejection of Claim 1(b)(ii) was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). The court correctly identified the relevant factors as set forth in *Bustamonte* and *Fulminate* and considered those factors. Most significantly, Petitioner was informed of his *Miranda* rights. The interrogation lasted less than two hours, and the interviewing detective's manner was, indeed, quite "low key." Therefore, Petitioner is not entitled to relief on Claim 1(b)(ii).

## CONCLUSION

For the foregoing reasons, the Court will not reconsider its dismissal of Claims 5 and 6 and will deny Claim 1 on the merits.

## ORDER

**IT IS ORDERED:**

1.    Petitioner's motion for reconsideration (construed as included in Dkt. 34), is DENIED.

2.    Claim 1 of the Petition (Dkt. 1) is DENIED.

3.    The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If

Petitioner wishes to appeal, he must file a timely notice of appeal with the Clerk of Court. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: November 19, 2019

Honorable Candy W. Dale
United States Magistrate Judge